# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-16-00718-CV

### In re Volkswagen Clean Diesel Litigation:
### Texas Clean Air Act Enforcement Cases

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
NO. D-1-GN-16-000370, HONORABLE TIM SULAK, JUDGE PRESIDING**

## O P I N I O N

This appeal presents issues concerning State and local-government enforcement of the Texas Clean Air Act (TCAA).[1]  Appellant, the State of Texas, and a number of Texas counties filed the underlying TCAA-enforcement lawsuits in various counties across Texas against the German automaker Volkswagen[2] after Volkswagen admitted that it had installed emissions "defeat devices" on certain of its diesel vehicles manufactured in the United States between 2009 and 2016. After the Texas Judicial Panel on Multidistrict Litigation transferred these TCAA-enforcement suits to Travis County District Court for consolidated and coordinated pretrial proceedings,[3] the State filed pleas to the jurisdiction challenging the pretrial court's jurisdiction over the eighteen county suits

---

[1]  *See* Tex. Health & Safety Code §§ 382.001–.510 (TCAA provisions).

[2]  Although we refer to them collectively as "Volkswagen," the defendants named in the underlying cases also include Volkswagen Group of America, Inc., Volkswagen Group of America Chatanooga Operations, LLC, Audi of America, LLC, Porsche Cars North America, Inc., Robert Bosch LLC, Robert Bosch, GMBH, and Dr. Ing. H.C.F. Porsche AG.

[3]  *See* Tex. Gov't Code § 74.162 (authorizing judicial panel on multidistrict litigation (MDL) to transfer cases to pretrial court).

that had been filed after the State's suit. In this appeal, the State challenges the pretrial court's orders denying the State's pleas to the jurisdiction.[4] Based on our determination that the pretrial court has subject-matter jurisdiction over the eighteen county-filed lawsuits, we affirm the pretrial court's order denying the State's pleas to the jurisdiction.

**Background**

In September 2015, the EPA issued to Volkswagen a notice of violation of the federal Clean Air Act after Volkswagen admitted to installing unauthorized software-based "defeat devices" in approximately 480,000 diesel-engine automobiles manufactured in the U.S. from 2009 through 2015.[5] The defeat devices installed on the Volkswagen- and Audi-branded vehicles "bypass, defeat,

---

[4] The State also included in its appeal a petition for writ of mandamus relating to the trial court's refusal to abate several of the underlying cases. On our own motion, we have severed the State's petition for writ of mandamus into a separate cause that we address in an opinion also issued today. *See In re Volkswagen Clean Diesel Litig.: Tex. Clean Air Act Enf't Cases*, No. 03-17-000478-CV (Tex. App.—Austin July 28, 2017).

[5] The September 18, 2015 notice was directed to Volkswagen AG, Audi AG, and Volkswagen Group of America, Inc. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 4010049, *1 (N.D. Calif., July 26, 2016); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 148 F. Supp. 3d 1369, 1367 (U.S. Jud. Pan. Mult. Lit. 2015) (transferring to MDL court for pretrial proceedings). The EPA issued an additional, similar notice regarding further emissions-cheating software on November 2, 2015, covering other Volkswagen and Audio automobiles, and adding the Porsche Cayenne. *See In re Porsche "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 158 F.Supp. 1369, 1371 (U.S. Jud. Pan. Mult. Lit. 2015). The second EPA notice was directed to, in addition to the above parties, Porsche AG and Porsche Cars North America, Inc. *See In re Volkswagen*, 2016 WL 4010049 at *2.

or render inoperative elements of the vehicles' emission control systems that exist to comply with [Clean Air Act] emission standards."[6]

In the wake of the EPA's notice of violation, more than 600 environmental and consumer cases were filed against Volkswagen in both federal and state courts across the country.[7] In Texas, more than sixty consumer and environmental lawsuits were filed against Volkswagen by private parties, local governments, and the State. On Volkswagen's motion, the Texas cases were transferred to two multidistrict litigation (MDL) pretrial courts in Travis County for "consolidated or coordinated pretrial proceedings"—one court presiding over the consumer-protection cases and the other over the TCAA-enforcement cases filed by the State and various local governments.[8]

This appeal arises from interlocutory proceedings in the environmental-MDL group, which consists of lawsuits filed by the following governmental entities:

- Harris County, filed in Harris County District Court on September 29, 2015, and Fort Bend County, filed in Fort Bend County District Court on October 7, 2015 (collectively, "the first-filing counties");

- The State of Texas, filed in Travis County District Court on October 8, 2015; and

---

[6] *See In re Volkswagen*, 2016 WL 4010049 at *1. The EPA asserts the defeat devices allow the vehicles to release nitrogen oxides at a factor of up to 40 times over the permitted limit. *See id.*

[7] The federal consumer proceedings were transferred to a federal MDL court for coordinated and consolidated pretrial proceedings. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 148 F.Supp 3d 1367, 1369 (U.S. Judicial Panel on Multidistrict Litigation 2015); *see also In re Porsche,* 158 F.Supp. 3d. at 1371 (transferring Porsche-related cases to the Volkswagen MDL).

[8] *See* Tex. Gov't Code § 74.162 (authorizing judicial panel on MDL to "transfer civil actions involving one or more common questions of fact pending in the same or different . . . courts . . . to any district court" if the transfer will "be for the convenience of the parties and witnesses" and "promote the just and efficient conduct of the actions").

3

- Bexar, Brazos, Dallas, Denton, Ector, El Paso, Hidalgo, Hunt, Jefferson, Lubbock, Montgomery, Nueces, Parker, Tarrant, Taylor, Travis, Victoria, Walker, and Webb counties, all filed in district courts in their respective counties after October 8, 2015; (collectively, "the later-filing counties").[9]

In multiple motions, including the pleas to the jurisdiction at issue in this appeal, the State asked the pretrial court to dismiss the later-filing counties' lawsuits on various grounds such as lack of standing, justiciable interest, capacity, authority, and dominant jurisdiction. In those motions, the State argued that the TCAA's enforcement provisions[10] precluded the later-filing counties' lawsuits once the State had filed a TCAA-based lawsuit against Volkswagen. The MDL pretrial court denied the State's motions, and we denied the State's petition for permissive interlocutory appeal of the pretrial court's orders.[11] Here, the State appeals from the pretrial court's interlocutory order denying its pleas to the jurisdiction.[12]

## Analysis

The State's challenge to the pretrial court's denial of the pleas to the jurisdiction is based on the State's contention that the TCAA's enforcement provisions preclude local governments from filing their own TCAA-enforcement lawsuits once the State has filed suit against a defendant

---

[9] Travis County intervened in the State's lawsuit.

[10] The TCAA's enforcement provisions are in Chapter 7 of the Texas Water Code. *See* Tex. Water Code §§ 7.001–.360.

[11] *See In re Volkswagen Clean Diesel Litig.: Tex. Clean Air Act Enf't Actions*, 504 S.W.3d 547 (Tex. App.—Austin 2016); *see also* Tex. Civ. Prac. & Rem. Code § 51.014(d), (f) (permissive interlocutory-appeal procedures).

[12] *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) (permitting appeal from interlocutory order that grants or denies governmental unit's plea to the jurisdiction).

4

for the same TCAA violations.  That ban on later-filed suits, the State urges, means that the later-filing counties do not have a justiciable interest in pursuing their TCAA-enforcement claims and, thus, the pretrial court lacked subject-matter jurisdiction over the later-filing counties' lawsuits.

**Standard of review**

A plea to the jurisdiction challenges a trial court's authority to decide the subject matter of a specific cause of action.[13] Here, the State challenges the counties' standing—specifically, whether the counties have a justiciable interest in their claims.  We review questions of subject-matter jurisdiction de novo.[14] The burden is on the counties to affirmatively demonstrate the trial court's jurisdiction.[15] When assessing a plea to the jurisdiction, our analysis begins with the live pleadings.[16]  Although we may also consider evidence submitted to negate the existence of jurisdiction—and must do so when necessary to resolve the jurisdictional issue—we need not do so here because the underlying jurisdictional facts are not disputed.[17]  We construe the plaintiffs'

---

[13] *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004).

[14] *See, e.g.*, *University of Hous. v. Barth*, 403 S.W.3d 851, 854 (Tex. 2013) (per curiam) (citing *Miranda*, 133 S.W.3d at 226).

[15] *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 149 (Tex. 2012) (citing *Miranda*, 133 S.W.3d at 217, 226).

[16] *Id.*

[17] *See id.*

pleadings liberally, taking all factual assertions as true, and look to the plaintiffs' intent.[18] We must grant the plea to the jurisdiction if the counties affirmatively negate the existence of jurisdiction.[19]

To the extent the parties' issues turn on construction of a statute, we review these questions de novo.[20] Our primary objective in statutory construction is to ascertain and give effect to the Legislature's intent.[21] In determining legislative intent, we begin with the statute's words.[22] "Where text is clear, text is determinative of that intent."[23] We consider the words in context, not in isolation.[24] We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results.[25]

---

[18] *Id.*

[19] *See id.*

[20] *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006).

[21] *See First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008); *Shumake*, 199 S.W.3d at 284.

[22] *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011).

[23] *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (op. on reh'g) (citing *Shumake*, 199 S.W.3d at 284; *Alex Sheshunoff Mgmt. Servs. v. Johnson*, 209 S.W.3d 644, 651–52 (Tex.2006)).

[24] *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002).

[25] *See Entergy Gulf States, Inc.*, 282 S.W.3d at 437; *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008); *see also* Tex. Gov't Code Ann. § 311.011 ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage," but "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.").

**The TCAA's enforcement provisions**

The TCAA's purpose is to "safeguard the state's air resources from pollution by controlling or abating air pollution and emissions of air contaminants."[26] To that end, the TCAA prohibits the emission of air contaminants and activities that cause or contribute to air pollution.[27] The TCAA authorizes the Texas Commission on Environmental Quality (TCEQ or commission) to administer the TCAA, including granting TCEQ the authority to adopt administrative rules regarding car emissions.[28] Relevant here, TCEQ has adopted rules requiring air-quality-control systems on car engines and prohibiting the sale or use of emission-defeat devices.[29]

TCEQ's authority to enforce the TCAA and the other statutes over which it has jurisdiction is codified in Chapter 7 of the Water Code.[30] Chapter 7 authorizes TCEQ to enforce the TCAA by imposing penalties for TCAA violations, either through administrative proceedings or, as is the case here, in a civil action brought by the Texas Office of the Attorney General under Subchapter D as follows:

---

[26] Tex. Health & Safety Code § 382.002(a).

[27] *See id.* § 382.085 (prohibiting "emission of any air contaminant or the performance of any activity that causes or contributes to, or that will cause or contribute to, air pollution").

[28] *See id.* §§ 382.011 (authorizing administration of TCAA); .017 (authorizing rules); .019(a) (authorizing rules "to control and reduce emissions from engines used to propel land vehicles").

[29] *See* 30 Tex. Admin. Code § 114.20(b),(c), (e) (TCEQ, Maintenance & Operation of Air Pollution Control Systems or Devices Used to Control Emissions from Motor Vehicles).

[30] *See* Tex. Water Code §§ 7.001–.360 ("Enforcement").

(a) On the request of the executive director or the [TCEQ], the attorney general shall institute a suit in the name of the state for injunctive relief . . . to recover a civil penalty, or for both injunctive relief and a civil penalty.

. . . .

(c) The suit may be brought in Travis County, in the county in which the defendant resides, or in the county in which the violation or threat of violation occurs.[31]

A violation occurs when a person violates a statute, rule, order, or permit relating to the TCAA.[32] In a civil suit, a violator "shall be assessed for each violation a civil penalty not less than $50 nor greater than $5,000 for each day of each violation as the court or jury considers proper."[33] Continuing violations are subject to "a civil penalty not less than $100 nor greater than $25,000 for each subsequent day and for each subsequent violation," and "[e]ach day of a continuing violation is a separate violation."[34] As noted above, the amount of the penalty is determined by the fact finder.[35] Finally, the State is entitled to reasonable attorney fees and costs for its prosecution of a TCAA enforcement suit.[36]

Subchapter H of Chapter 7, titled "Suit by Others," authorizes local governments to enforce TCAA violations occurring in the local government's jurisdiction:

---

[31] Tex. Water Code § 7.105; *see id.* §§ 7.002 (general enforcement authority); .051–.075 (administrative proceedings); .101–.111 (Subchapter D, titled "Civil Penalties").

[32] *See id.* § 7.101–.103; Tex. Health & Safety Code § 382.085(b).

[33] *Id.* § 7.102.

[34] *Id.* § 7.103.

[35] *See id.* ("as the court or jury considers proper").

[36] *See id.* § 7.108.

> If it appears that a violation or threat of violation of . . . [the TCAA] . . . , or a rule adopted or an order or a permit issued under [the TCAA] has occurred or is occurring in the jurisdiction of a local government, the local government . . . may institute a civil suit under Subchapter D in the same manner as the commission in a district court by its own attorney for the injunctive relief or civil penalty, or both, as authorized by this chapter against the person who committed, is committing, or is threatening to commit the violation.[37]

In a local-government suit, TCEQ is a "necessary and indispensable party,"[38] and the trier of fact is tasked with determining the amount of a civil penalty by considering, stated generally, the nature of the violation, the impact of the violation, and various factors regarding the violator, including degree of culpability, violation history, and economic benefit gained from the violation.[39]

**Jurisdiction over the later-filed counties' enforcement suits**

The State maintains that the plain text of the TCAA's enforcement provisions precludes local governments from bringing enforcement suits once the State has initiated a claim for the same geographic area and that, as a result, the later-filing counties here lack a justiciable interest (a component of standing) in their TCAA enforcement actions.[40] We disagree. The plain and

---

[37] *Id.* 7.351(a). The 85th Legislature amended Subchapter H by modifying section 7.351, adding section 7.3511, and repealing section 7.357. *See* Act of May 24, 2017, 85th Leg., R.S., ch. 857, §§ 1–3, 2017 Tex. Gen. Laws __, __ (codified at Tex. Water Code §§ 7.351, .3511). The changes apply only to TCAA violations occurring after the effective date of this legislation, which is September 1, 2017. *See id.* §§ 4–5. As such, they are not applicable here.

[38] Tex. Water Code § 7.353.

[39] *See id.* § 7.359 (referring to factors listed in section 7.053 for assessing administrative penalties).

[40] Statutory construction is a legal issue that we review de novo. *See, e.g.*, *Shumake*, 199 S.W.3d at 284. "'Our objective . . . is to give effect to the Legislature's intent, which requires us to first look to the statute's plain language.'" *ExxonMobil Pipeline Co. v. Coleman* 512 S.W.3d 895,

9

unambiguous language of the TCAA enforcement provisions authorize local governments to file enforcement suits without regard to the State's filing of an enforcement suit. Section 7.351 provides that a "local government may institute a civil suit under Subchapter D in the same manner as [TCEQ]" for a violation that is occurring or has occurred in the local-government's jurisdiction.[41] Subchapter D, as detailed above, defines a violation of the TCAA, sets the maximum for civil penalties, prescribes the procedure for and limits of a State suit for civil penalties, and requires that civil penalties recovered in a suit brought under Subchapter D by a local government be divided between the State and the local government.[42] Nothing in the text of the enforcement provisions imposes a limitation on the filing of a local-government suit brought after the State has filed suit or implies the existence of a time line. Nor is there anything in the text of the enforcement provisions that hint at such a limitation. Had the Legislature intended to limit TCAA-enforcement actions, it would have included language to that effect in the provision, as it did in other sections of Chapter 7.[43] For example, for violations of Chapter 401 of the Health Code, Chapter 7 allows a local government to file an enforcement suit only "if the commission does not have a suit filed before the

899 (Tex. 2017) (per curiam) (quoting *Lippincott v. Whisenhunt*, 462 S.W.3d 507 509 (Tex. 2015) (per curiam)).

[41] *Id.* § 7.351(a).

[42] *See* Tex. Water Code §§ 7.101–.111.

[43] *See In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008) ("We presume the Legislature included each word in the statute for a purpose, and that words not included were purposefully omitted." (internal citations omitted)).

10

121st day after" a written complaint is filed.[44]  And, in fact, the Legislature has since amended Subchapter H to, stated generally, prevent the filing of such local-government enforcement suits under section 7.351 suits if the State has already filed an enforcement suit for the same violations.[45]

The State maintains that the Water Code's use of the word "institute" in sections 7.105(a) and 7.351, and its specification that a local government "may institute a civil suit under Subchapter D in the same manner as the commission" in section 7.351, impose limitations on later-filed suits.  Specifically, the State argues that because "institute" means "to begin (legal proceedings) in a court,"[46] and because each penalty must address a specific violation, a suit on such a violation can be started only by the State or a local government, not both.  But the State's argument stretches a word that is simply a formal way to say "start" or "begin" a lawsuit[47] and a phrase that simply means "in the same way the commission institutes suit."[48]  The plain text does not support the State's

---

[44]  Tex. Water Code § 7.357.  This provision is repealed effective September 1, 2017.  *See* Act of May 24, 2017 at § 3.

[45]  *See* Act of May 24, 2017 at § 2, sec. 7.3511(c) ("Before instituting any claim [under 7.351], a local government . . . shall provide to the attorney general and [TCEQ] written notice of each alleged violation, the facts in support of the claim, and the specific relief sought."), (d) ("A local government . . . may institute a claim [under 7.351] on or after the 90th day after the attorney general and the [TCEQ] receive the notice required by Subsection (c) unless before the 90th day after the date of notice is received [TCEQ or the attorney general] has commenced a civil suit under Subchapter D concerning at least one of the alleged violations set forth in the notice.").

[46]  Citing *New Oxford American Dictionary* 900 (3rd ed. 2010).

[47]  *See, e.g.*, *American Heritage Dictionary of the English Language* 909 (5th ed. 2011) ("To initiate; begin."); Garner, Bryan A., *A Dictionary of Modern Legal Usage* 456 (2d ed.) ("**Institute** is a FORMAL WORD for *begin* or *start*."); Garner, Bryan A., *Garner's Modern American Usage* 473 (3d ed. 2009) ("**Institute** is a FORMAL WORD for *begin* or *start*.").

[48]  *See American Heritage Dictionary* at 1068 (defining "manner" as "a way of doing something or the way in which a thing is done or happens").

assertion that a local government filing such a suit would be acting *in place* of the State, only that its enforcement suit be brought in the same way as the State.

In further support of its argument, the State emphasizes section 7.107's imposition of a division of penalties between the State and a local government under certain circumstances:

> [A] civil penalty recovered in a suit brought under this subchapter by a local government shall be divided as follows:
> (1) the first $4.3 million of the amount recovered shall be divided equally between:
>     (A) the state; and
>     (B) the local government that brought the suit; and
> (2) any amount recovered in excess of $4.3 million shall be awarded to the state.[49]

According to the State, this provision's use of the word "brought" means that the provision is triggered only when the local-government was the first entity to file the TCAA-enforcement lawsuit. But again, in the absence of actual text that specifies filing order, otherwise indicates a temporal requirement, or somehow limits the local-government suits, the State relies too heavily on a word that simply means, in this context, "to advance or set forth (charges) in a court"[50] or relatedly "to sue; institute legal proceedings."[51] This provision simply establishes a fee-sharing arrangement for civil penalties recovered in a suit "brought" by a local government. It does not support the State's assertion that, once the State files an enforcement action, local governments lose the ability to bring their own enforcement suits.

---

[49] Tex. Water Code § 7.107.

[50] *American Heritage Dictionary* at 232 (defining "bring").

[51] "*Bring an action*," *Blacks Law Dictionary.*

Relatedly, the State argues that because section 7.107 does not provide for a local government to obtain a portion of the recovery in a statewide lawsuit brought by the State, the statute does not contemplate later-filed suits by local governments, thus supporting the State's argument that the enforcement provisions foreclose the filing of local-government suits once the State has filed suit. As noted, however, the plain language of section 7.107 prescribes that civil penalties recovered in a suit brought by a local government be divided between the local government and the State. The fact that the provision does not address penalties recovered in a State-filed lawsuit does not, absent other language, preclude local-government suits; it simply does not require a division of those penalties.

The State contends that the TCAA-enforcement provisions taken together suggest that the Legislature intended to adopt a system similar to the doctrine of dominant jurisdiction, in which the first-filed lawsuit is the proper place to determine all inherently related claims deriving from the same fact pattern. But even if that were the case, the doctrine of dominant jurisdiction does not preclude later-filed suits (or the plaintiff's justiciable interest in the later-filed lawsuits), it simply requires that they be abated until the impediment to the later-filed suit is removed.[52] And particularly relevant here, the doctrine of dominant jurisdiction presumes the later-filed court's jurisdiction over the claims filed in its court, although requiring abatement of the later-filed cases until the first-filed case is resolved.[53]

---

[52] *See Texas Hwy. Dep't v. Jarrell*, 418 S.W.2d 486, 488 (Tex. 1967); *Morgan v. City of Alvin*, 175 S.W.3d 408, 421 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

[53] *See In re Puig*, 351 S.W.3d 301, 305 (Tex. 2011) (explaining doctrine of dominant jurisdiction, including that it arises when two courts have concurrent jurisdiction); *see also id.* at 306 (holding that relators should have filed plea in abatement rather than plea to the jurisdiction because

The remainder of the State's argument raises the specter of complicated and unwieldy litigation and results that will occur if the later-filing counties' suits are allowed to continue. Relatedly, the State maintains that allowing these suits to continue will interfere with the State's interest in imposing a uniform policy regarding TCAA penalties.[54] But the threats of unwieldy litigation and loss of State control over the litigation process do not overcome the plain text of the enforcement provisions, which unambiguously authorize local governments to file enforcement lawsuits without regard to a State-filed enforcement lawsuit.

**Conclusion**

Because the underlying trial courts, and thus the MDL pretrial court,[55] have jurisdiction over the later-filing counties' TCAA-enforcement actions, we affirm the MDL pretrial court's orders denying the State's pleas to the jurisdiction.

_____
Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Field and Bourland

Affirmed

Filed:   July 28, 2017

---

issue was one of dominant, rather than exclusive, jurisdiction).

[54] *See BCCA Appeal Grp., Inc. v. City of Houston*, 496 S.W.3d 1, 24 (Tex. 2016) (holding City's air-quality ordinances preempted).

[55] *See* Tex. Gov't Code § 74.164 (authorizing appointed MDL judge to "preside over the transferred action as if the transferred action were originally filed in the transferor court").