**Reversed and Remanded and Memorandum Opinion filed November 5, 2019**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00984-CV

---

## HARRIS COUNTY AND THE STATE OF TEXAS ACTING BY AND THROUGH THE TEXAS COMMISSION ON ENVIRONMENTAL QUALITY, Appellants and Cross-Appellees

## V.

## S.K. AND BROTHERS, INC., D/B/A RIVER OAKS CLEANERS; TREY MELCHER AND YVONNE EVIE MELCHER, TRUSTEES OF THE EVIE MELCHER NON-EXEMPT TRUST; MELCHER INVESTMENTS; AND BILL E. LEWIS AND RICHARD L. KERR, JR., CO-TRUSTEES OF THE LUCILE BIRMINGHAM MELCHER MANAGEMENT TRUST AND THE LEROY MELCHER MARITAL DEDUCTION TRUST; AND FORMER CO-TRUSTEES OF THE EVIE MELCHER NON-EXEMPT TRUST, Appellees and Cross-Appellants

---

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2011-52524**

---

## MEMORANDUM OPINION

Harris County and the State of Texas, acting by and through the Texas Commission of Environmental Quality (TCEQ), challenge the trial court's dismissal of their lawsuit against appellees (1) S.K. and Brothers, Inc., d/b/a River Oaks Cleaners; (2) Trey Melcher and Yvonne Evie Melcher, Trustees of the Evie Melcher Non-Exempt Trust; (3) Melcher Investments; and (4) Bill E. Lewis and Richard L. Kerr, Jr., Co-Trustees of the Lucile Birmingham Melcher Management Trust and the Leroy Melcher Marital Deduction Trust, and former Co-Trustees of the Evie Melcher Non-Exempt Trust (appellees (2), (3), and (4) are collectively the Melcher Defendants) for lack of standing. S.K. and Brothers and the Melcher Defendants, raise a cross-issue on appeal challenging the trial court's order assessing sanctions against them. Because we conclude Harris County and the State have standing to pursue their environmental claims against S.K. and Brothers and the Melcher Defendants, we reverse the trial court's dismissal order and remand the case to the trial court for further proceedings. Having reversed the trial court's dismissal order and remanded this case back to the trial court for further proceedings, we need not address S.K. and Brothers and the Melcher Defendants' cross-issue challenging the trial court's now interlocutory sanctions order, which the trial court may, in its discretion, reconsider on remand.

### BACKGROUND

The Melcher Defendants own a shopping center located in Houston. S.K. and Brothers has operated River Oaks Cleaners at the Melcher Defendants' shopping center since 1989. It is undisputed that S.K. and Brothers has continually used perchloroethylene (PCE) in its dry-cleaning operations since that date. The State considers PCE an industrial hazardous waste and a municipal hazardous waste.

Harris County filed suit against S.K. and Brothers and the Melcher Defendants in 2011, alleging that the dry-cleaning business had caused groundwater contamination with PCE, had failed to timely submit complete and correct Annual Waste Summaries, and also that neither S.K. and Brothers nor the Melcher Defendants have taken any actions to contain, control, or remediate the contamination. *See* Tex. Water Code § 7.351(a) (authorizing a local government to "institute a civil suit under Subchapter D in the same manner as the commission in a district court by its own attorney for the injunctive relief or civil penalty, or both, as authorized by this chapter against the person who committed, is committing, or is threatening to commit the violation."). Harris County also alleged that neither S.K. and Brothers nor the Melcher Defendants have filed an application to the TCEQ's Dry Cleaner Remediation Program. *See* Tex. Health & Safety Code §§ 374.001-.253. Harris County sought civil penalties and injunctive relief pursuant to the Texas Water Code, the Texas Health and Safety Code, and various rules and regulations enacted pursuant to those statutes. Harris County also joined TCEQ as a necessary and indispensable party as required by the Water Code.

The case went to trial before a jury in 2013, but the trial court declared a mistrial. The trial court then assessed sanctions, jointly and severally, against most of the defendants and their trial counsel.[1] Following the mistrial, additional discovery and environmental testing was performed during 2014 and 2015. S.K. and Brothers and the Melcher Defendants then filed a plea to the jurisdiction and motion to dismiss arguing that neither Harris County nor TCEQ have standing to bring the claims alleged in this lawsuit because the Dry Cleaner Remediation

---

[1] The trial court stated in its sanctions order that, "for purposes of this Order, the 'Defendants' refers to S.K. and Brothers, Inc. and Trey Melcher and Yvonne Evie Melcher, Trustees of the Evie Melcher Non-Exempt Trust; Melcher Investments. The 'Defendants' Attorneys' refers to Nathan Beedle and William F. Harmeyer."

3

Program provides the exclusive remedy for addressing environmental issues related to retail dry cleaners. Following a hearing, the trial court granted the plea and dismissed the case. The trial court vacated all orders previously signed in the case, except the order assessing sanctions. Harris County and TCEQ filed this appeal soon thereafter.

## ANALYSIS

In a single issue on appeal, Harris County argues that the trial court erred when it granted S.K. and Brothers and the Melcher Defendants' plea to the jurisdiction because the Water Code gives it standing to sue for alleged violations of Texas environmental laws. TCEQ raises two issues on appeal. In its first issue, TCEQ argues that the Dry Cleaner Remediation Program is not the exclusive avenue for the State of Texas, or local governments, to pursue the clean-up of contaminated retail dry-cleaner sites. In its second issue, TCEQ asserts that Harris County has standing to bring a civil suit, and TCEQ has standing as an indispensable party, when the suit is for violations of laws, and regulations promulgated thereunder, found in section 7.351 of the Texas Water Code. We address these issues together.

## I. Standard of review and applicable law

Standing, a component of subject-matter jurisdiction, is a constitutional prerequisite to maintaining suit. *Tex. Ass'n. of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444–45 (Tex. 1993); *Concerned Cmty. Involved Dev., Inc. v. City of Houston*, 209 S.W.3d 666, 670 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). A party's standing to pursue and maintain a cause of action is a question of law that we review de novo. *In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). In statutory standing cases, such as the present case, we apply statutory-interpretation

4

principles to determine whether the plaintiff asserting the claim under review falls within the category of parties upon whom standing has been conferred by the Legislature. *In re H.S.*, 550 S.W.3d at 155. Our task in construing statutes is to effectuate the Legislature's expressed intent, not to second-guess the policy choices it made, or to weigh the effectiveness of their results. *Ritchie v. Rupe*, 443 S.W.3d 856, 866 (Tex. 2014). We focus on the words of the statute, which best reveal legislative intent. *Id.* We presume that every word of a statute was used for a purpose, and every omitted word was purposefully not chosen. *Texas Law Shield, LLP v. Crowley*, 513 S.W.3d 582, 588 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). In determining the plain meaning of a statute, we construe the language according to the rules of grammar and common usage. *Id.* "As a general principle, we eschew constructions of a statute that render any statutory language meaningless or superfluous." *City of Dallas v. TCI West End, Inc.*, 463 S.W.3d 53, 57 (Tex. 2015).

When reviewing the question of standing, we take the allegations in the plaintiff's petition as true and construe them in favor of the plaintiff. *In re H.S.*, 550 S.W.3d at 155. In addition to the pleadings, we also consider relevant evidence offered by the parties. *Id.*

## II. The trial court erred when it granted the plea to the jurisdiction and dismissed Harris County's enforcement lawsuit.

Harris County filed suit against S.K. and Brothers and the Melcher Defendants pursuant to section 7.351(a) of the Texas Water Code. This section provides:

> Subject to Section 7.3511, if it appears that a violation or threat of violation of Chapter 16, 26, or 28 of this code, Chapter 361, 371, 372, or 382, Health and Safety Code, a provision of Chapter 401, Health and Safety Code, under the commission's jurisdiction, or Chapter

5

1903, Occupations Code, or a rule adopted or an order or a permit issued under those chapters or provisions has occurred or is occurring in the jurisdiction of a local government, the local government or, in the case of a violation of Chapter 401, Health and Safety Code, a person affected as defined in that chapter, may institute a civil suit under Subchapter D [of Health and Safety Code sections 401.01-.119] in the same manner as the commission in a district court by its own attorney for the injunctive relief or civil penalty, or both, as authorized by this chapter against the person who committed, is committing, or is threatening to commit the violation.

Tex. Water Code § 7.351(a) (footnote omitted).

Harris County alleged, among other things, that S.K. and Brothers and the Melcher Defendants were continually violating Chapter 26 of the Texas Water Code and the Texas Administrative Code by discharging hazardous waste, specifically PCE, into the State's water. *See* Tex. Water Code § 26.121(a)(1) (stating that no person may "discharge sewage, municipal waste, recreational waste, agricultural waste, or industrial waste into or adjacent to any water in the state"); 30 Tex. Admin. Code §§ 335.2, 335.4 (addressing permits and prohibiting disposal of industrial solid waste or municipal hazardous waste into or adjacent to waters in the state without obtaining specific authorization for such discharges from TCEQ). In addition, Harris County alleged that S.K. and Brothers failed to timely submit complete and correct Annual Waste Summaries as required by the Texas Administrative Code. *See* 30 Tex. Admin. Code § 335.9 (requiring generators of hazardous waste to make annual reports detailing handling of hazardous waste). Finally, Harris County alleged that the Melcher Defendants, as S.K. and Brothers's landlord, were liable for violating this requirement because they allowed S.K. and Brothers to continue occupying the property and to operate a dry-cleaning business, despite provisions in the lease contractually obligating S.K. and Brothers to comply with all laws, rules, and regulations of governmental authorities. Harris County sought civil penalties and injunctive relief against S.K.

6

and Brothers and the Melcher Defendants. *See* Tex. Water Code § 7.102 (detailing civil penalties for continuing violations).

In their plea to the jurisdiction, S.K. and Brothers and the Melcher Defendants[2] argued that Chapter 374 of the Texas Health and Safety Code preempts Harris County's claims because, in their view, Chapter 374 "exclusively provides an administrative process to address environmental issues related to all retail dry cleaners." In support of this exclusive-jurisdiction contention, S.K. and Brothers and the Melcher Defendants cite section 374.002 of the Dry Cleaner Environmental Response statute. Section 374.002 provides "to the extent that this chapter is inconsistent or in conflict with Chapter 361 or other general law, this chapter prevails." Tex. Health & Safety Code § 374.002. On appeal, they reinforce their argument that section 374.002 bars the application of any other environmental laws or rules to retail dry cleaners by pointing out the statutory construction principle that specific statutes prevail over general statutes. As a result of this more specific statute, S.K. and Brothers and the Melcher Defendants assert that Harris County and TCEQ lack standing to pursue the lawsuit against them for civil penalties and injunctive relief. We disagree.

We turn first to the statutory construction argument that a specific statute always controls over a more general one. Far from being a universal rule of statutory construction, this principle "applies only when the statutes at issue are ambiguous or irreconcilable." *State ex rel. Best v. Harper*, 562 S.W.3d 1, 10 (Tex. 2018) (citing Tex. Gov't Code § 311.026(a)). The Supreme Court of Texas has instructed that a court construes "statutes by first looking to the statutory language for the Legislature's intent, and only if we cannot discern legislative intent in the

---

[2] While the Melcher Defendants initially filed the plea to the jurisdiction, S.K. and Brothers joined in the plea about two weeks after it was filed.

language of the statute itself do we resort to canons of construction or other aids such as which statute is more specific." *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 639 (Tex. 2010). Further, we are to construe statutes so as to harmonize them with other relevant laws, if possible. *In re M.M.M.*, 428 S.W.3d 389, 395 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

We conclude that section 374.002 of the Health and Safety Code is not ambiguous. We therefore look to its plain language to resolve whether section 374.002 preempts all other environmental enforcement laws. We conclude that it does not, because it expressly states that Chapter 374, the Dry Cleaner Environmental Response statute, prevails over other law only to the extent Chapter 374 "is inconsistent or in conflict with" that other law. *See* Tex. Health & Safety Code § 374.002; *State ex rel. Best*, 562 S.W.3d at 9 ("The TCPA's dismissal provisions complement, rather than contradict, the removal statute."); *Cash Am. Intern., Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex. 2000) ("An agency has exclusive jurisdiction when the Legislature gives the agency alone the authority to make the initial determination in a dispute."); *In re Volkswagen Clean Diesel Litigation*, 557 S.W.3d 78, 85 (Tex. App.—Austin 2017, orig. proceeding) ("Had the Legislature intended to limit [Clean Air Act] enforcement actions, it would have included language to that effect in the provision as it did in other sections of Chapter 7."); *Bexar Metro. Water Dist. v. City of Bulverde*, 156 S.W.3d 79, 90 (Tex. App.—Austin 2004, pet. denied) (stating that "courts are not deprived of their jurisdiction unless a statute explicitly grants an administrative agency exclusive jurisdiction."). Additionally, when the Legislature seeks to make a remedy exclusive, it does so expressly. *See, e.g.*, Tex. Tax Code § 42.09 (procedures prescribed for adjudication of grounds of protest for property taxes "are exclusive"); Tex. Bus.

Orgs. Code § 153.256(d) (a charging order is the "exclusive" remedy by which a judgment creditor of a partner may satisfy a judgment out of the judgment debtor's partnership interest); *City of Richardson v. Responsible Dog Owners of Tex.*, 794 S.W.2d 17, 19 (Tex. 1990) ("Thus, the mere fact that the legislature has enacted a law addressing a subject does not mean that the subject matter is completely preempted.") *Twin Creeks Golf Grp. v. Sunset Ridge Owners Ass'n*, 537 S.W.3d 535, 541 (Tex. App.—Austin 2017, no pet.) (declining to interpret Section 82.0675 of the Property Code to exempt condominium owners because if the Legislature had intended to exempt them, "it could have done so expressly"); *Rieves v. Buc-ee's Ltd.*, 532 S.W.3d 845, 854 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("Section 15.52 of the Covenants Not to Compete Act provides that the criteria for enforceability of a covenant in section 15.50 and the procedures and remedies for enforcement in section 15.51 'are exclusive and preempt' any other enforceability criteria or 'procedures and remedies in an action to enforce a covenant not to compete under the common law or otherwise'").

We therefore turn to whether S.K. and Brothers and the Melcher Defendants have pointed out an irreconcilable conflict between another law and Chapter 374. They initially assert that section 374.055 of the Health and Safety Code provides such a conflict because it directs TCEQ to "administer this chapter in accordance with this section" and further directs that it should "deal with contamination from dry cleaning facilities by using money in the fund." *See* Tex. Health & Safety Code § 374.055(a), (b). Nothing in the language of this section, however, addresses, much less limits, the authority of local governments such as Harris County to pursue enforcement actions against retail dry cleaners outside the framework of Chapter 374. *See Dealers Elec. Supply Co. v. Scroggins Const. Co., Inc.*, 292 S.W.3d 650, 658 (Tex. 2009) (stating that conflicting statutory provisions

9

must be construed to give effect to both if at all possible); *In re Volkswagen Clean Diesel Litigation*, 557 S.W.3d at 85 ("nothing in the text of the enforcement provisions imposes a limitation on the filing of a local-government suit brought after the State has filed suit or implies the existence of a time line."). Next, S.K. and Brothers and the Melcher Defendants cite to section 374.051, which directs the TCEQ to establish the rules necessary to administer and enforce Chapter 374. *See* Tex. Health & Safety Code § 374.051. Once again, nothing in the language of this section limits the authority of local governments to pursue environmental enforcement actions against dry cleaners. *See Dealers Elec. Supply Co.*, 292 S.W.3d at 658; *In re Volkswagen Clean Diesel Litigation*, 557 S.W.3d at 85. They then cite sections 374.151 and 374.152 which prohibit releases of dry-cleaning solvents and require emergency action by the TCEQ if the release poses a threat to human health or to the environment. *See* Tex. Health & Safety Code § 374.151, .152. Again, nothing in the language of these sections limit the authority of local governments to pursue enforcement actions against dry cleaners for non-emergency releases. *See Dealers Elec. Supply Co.*, 292 S.W.3d at 658; *In re Volkswagen Clean Diesel Litigation*, 557 S.W.3d at 85. The same is true for the remaining cited sections of Chapter 374. *See* Tex. Health & Safety Code § 374.153 (requiring TCEQ to take corrective action after release from dry-cleaning facility); .202 (creating mechanism for TCEQ to hold owner responsible for costs of corrective action taken to address release); .251 (providing for judicial review of administrative orders by TCEQ). Finally, S.K. and Brothers and the Melcher Defendants cite section 7.0525 of the Texas Water Code in support of their argument. This section details the penalties the TCEQ may assess for violations of section 374.252 of the Health and Safety Code. *See* Tex. Water Code § 7.0525. Again, this section is limited to the penalties assessed for violations of section 374.252, and it does not limit the authority of local governments to pursue

enforcement actions against dry cleaners. *See Dealers Elec. Supply Co.*, 292 S.W.3d at 658; *In re Volkswagen Clean Diesel Litigation*, 557 S.W.3d at 85.

Because S.K. and Brothers and the Melcher Defendants have not pointed out any conflict between Chapter 374 and the statutes and rules and regulations Harris County relies on in its enforcement action, we conclude that Chapter 374 of the Health and Safety Code does not preempt section 7.351 of the Texas Water Code, which expressly authorizes local governments to file civil suits seeking civil penalties and injunctive relief against those who are responsible for unauthorized discharges of municipal and industrial waste into or adjacent to any water in the state. This conclusion is reinforced by the language found in section 374.207 providing that the State and other persons—excluding local governments—may not initiate suits for judicial and administrative actions to compel corrective action or recover costs once a dry-cleaning site's owners have been deemed eligible to have corrective action costs paid by the fund. *See* Tex. Health & Safety Code § 374.207. To be eligible to have corrective action costs paid by the "Dry Cleaning Facility Release Fund," the dry-cleaning site owner must comply with the requirements set forth in section 374.203, including applying for a ranking under section 374.154, titled "Ranking of Contaminated Dry [-] Cleaning Sites." This provision does exempt some dry cleaners from some types of claims.[3] By exempting only certain dry cleaners and certain claims, the Legislature expressed its intent to *not* make the Dry Cleaner Remediation Program the exclusive remedy in *all* circumstances. *See Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 401 (Tex. 2000) ("Our conclusion that section 401.021 does not provide a right to judicial review for every APA hearing allowed by the Act is supported by the fact that the Legislature expressly included a right to judicial

---

[3] It is undisputed that S.K. and Brothers and the Melcher Defendants have not applied for a ranking under section 374.154.

11

review for certain APA hearings."); *Dallas Merch.'s & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 493 n.7 (Tex. 1993) (reasoning that inclusion of one thing in a statute suggests exclusion of all others); *see also In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008) ("We also presume the Legislature included each word in the statute for a purpose, and that words not included were purposefully omitted.") (internal citations omitted).

Because Harris County had statutory authorization to file an enforcement action against S.K. and Brothers and the Melcher Defendants, we hold that the trial court erred when it granted the plea to the jurisdiction. *See In re Sullivan*, 157 S.W.3d 911, 915 (Tex. App.—Houston [14th Dist.] 2005) (orig. proceeding) ("In statutory standing cases, such as this, the analysis is a straight statutory construction of the relevant statute to determine upon whom the Legislature conferred standing and whether the claimant in question falls in that category."). We sustain Harris County's and TCEQ's issues on appeal.

## CONCLUSION

Having sustained Harris County's and TCEQ's issues on appeal, we reverse the trial court's order granting the plea to the jurisdiction and dismissing Harris County's and TCEQ's causes of action. We remand the case to the trial court for further proceedings.[4]

---

[4] Having reversed the dismissal order and remanded the case back to the trial court for further proceedings, we need not address S.K. and Brothers and the Melcher Defendants cross-issue challenging the trial court's now interlocutory sanctions order, which the trial court may, in its discretion, reconsider on remand. *See* Tex. R. App. P. 47.1; *Nice v. Dodeka, L.L.C.*, No. 09-10-00014-CV, 2010 WL 4514174, at *7 n.3 (Tex. App.—Beaumont Nov. 10, 2010, no pet.) (mem. op.) ("Additionally, because we have reversed the trial court's judgment, the trial court's decisions to deny Nice's motions for summary judgment are interlocutory. Consequently, the claims Nice has raised in his counterclaim are still before the trial court, unless these claims are resolved prior to trial through dispositive motions.").

/s/     Jerry Zimmerer
Justice


Panel consists of Justices Wise, Zimmerer, and Spain.