**Opinion issued December 31, 2025**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-23-00916-CV

————————————

**WENDY HERNANDEZ, Appellant**

**V.**

**DIANA CASTANO, Appellee**

On Appeal from the County Court at Law No. 1
Galveston County, Texas
Trial Court Case No. 22-FD-1527

## MEMORANDUM OPINION

Appellant, Wendy Hernandez, challenges the trial court's judgment, granting a declaratory judgment in favor of appellee, Diana Castano, following Castano's intervention in a divorce proceeding between Hernandez and her husband, Saul

Islas.[1]  In three issues, Hernandez contends that the trial court erred in lifting the abatement in the case and entering a final judgment in favor of Castano.

We affirm.

## Background

On June 24, 2022, Hernandez's husband, Islas,[2] filed a petition for divorce in the trial court—County Court at Law No. 1 of Galveston County, Texas.  Islas alleged that he and Hernandez were married on January 2, 2015 and ceased living together as spouses on December 1, 2018.  Islas asserted grounds for the divorce and stated that he believed he and Hernandez "w[ould] enter into an agreement for the division of their [property]."

On March 10, 2023, Castano filed a petition in intervention, motion for emergency hearing, and trespass to try title action, alleging that Hernandez was in possession of a property located in Galveston County (the "property"), which Hernandez had acquired by fraud.  In her petition, Castano explained that she married her ex-husband, Manuel Reyes, on November 28, 2012, and in 2014, while Castano was married to Reyes, Hernandez began dating him.  In June 2016, Reyes purchased the property with community funds, and in July 2016, Reyes purportedly

---

[1]  Castano and Islas ultimately non-suited their claims against each other in the divorce proceeding.

[2]  Islas did not file a notice of appeal from the trial court's judgment and is not a party to this appeal.

2

conveyed the property to Hernandez, who was married to Islas at the time. Between 2016 and 2019, Reyes built a home on the property. Castano was not aware of the purchase of the property or that a home was built during her marriage to Reyes. In 2019, during his divorce proceeding with Castano, Reyes "again deeded the [p]roperty to Hernandez." Thus, Castano's and Reyes's judgment in their divorce proceeding did not mention the property because Castano was not aware of its existence.

In her petition in intervention, Castano sought a declaratory judgment, requesting that the trial court declare that the property was fraudulently transferred to Hernandez and that the property belonged to Castano. According to Castano, she was "entitled to possession of the [p]roperty pursuant to [c]ourt orders, which [were] the subject of contested litigation in multiple courts."

In response, on March 28, 2023, Hernandez filed a motion to strike the petition in intervention and a motion to abate. In her motion, Hernandez asserted that there were "open cases involving the same parties[,] same factual disputes[,] and same causes of action," specifically:

- Trial court cause number 17-DCV-242799, in the 328th District Court of Fort Bend County, Texas (the "328th Fort Bend County case");

- Trial court cause number 19-CV-1677, in the 122nd District Court of Galveston County (the "122nd Galveston County case"); and

- Trial Court cause number 21-DCV-288227, in the 328th District Court of Fort Bend County (the "bill of review case").

3

According to Hernandez, the 328th Fort Bend County case was filed on September 9, 2019[3] by Reyes against Castano "to divide undivided community property." In that proceeding, Castano filed counterclaims against Reyes and third-party claims against Hernandez for reconstitution of the marital estate, breach of fiduciary duty, fraud, rescission, conversion, unjust enrichment, conspiracy, constructive trust, suit to quiet title, unclean hands, and declaratory judgment "centered around . . . a claim that . . . Reyes [improperly] gave . . . Hernandez the property," which was community property. Among other things, Castano requested a declaration that the property was "rightfully owned by the Castano/Reyes marital estate and the property [was] and shall be included in the reconstituted marital estate."

Hernandez further asserted that the 122nd Galveston County case was filed on September 6, 2019 by Armadillo Glass, Inc, a creditor for Reyes, against Reyes, Castano, and Hernandez. In that suit, Armadillo Glass, Inc. alleged that it had secured a judgment against Reyes in Harris County, Texas county civil court, but during its suit against Reyes, Reyes had deeded the property to Hernandez. In the

---

[3]     In her motion, Hernandez stated that the 328th Fort Bend County case was filed on September 6, 2019, but it appears that Reyes filed his original petition for postdivorce division of property in the 328th Fort Bend County case on September 9, 2019. *See Higginbotham v. Gen. Life & Accident Ins., Co.*, 796 S.W.2d 695, 696 (Tex. 1990) (court may take judicial notice of dates). In her briefing, Hernandez agreed that the 328th Fort Bend County case was filed on September 9, 2019.

4

122nd Galveston County case, Amarillo Glass, Inc. sought a declaratory judgment that Reyes was "an owner of at least one half of the . . . property," and it requested "a judgment of foreclosure for the sale of the . . . property for payment of [Amarillo Glass, Inc.'s] judgment" against Reyes.

Finally, according to Hernandez, the bill of review case was filed on October 15, 2021, by Castano against Reyes, requesting that her and Reyes's divorce decree be set aside because Castano had an ownership interest in the property as it was community property in her marriage to Reyes and the divorce decree did not divide the property as part of their marital estate. Castano alleged that the property was paid for during her marriage to Reyes with community funds and then transferred to Hernandez by Reyes "to defraud the community estate." After the divorce decree was entered, Reyes admitted to Castano that he had concealed the transfer of the property to Hernandez during the pendency of their divorce proceeding. Hernandez filed a petition in intervention in the bill of review case.

Hernandez moved to strike Castano's petition in intervention in the instant case, and, in the alternative, she requested that the trial court abate the case because Castano's claims against Hernandez were "already pending in" the 328th Fort Bend County case and "[t]here [were] two other matters involving the same controversy also pending elsewhere."

5

Hernandez subsequently filed a plea in abatement, requesting that the trial court abate the proceedings because the claims alleged by Castano in her petition for intervention were "the same claims that [were] subject to disputes in other causes of action," i.e., the 328th Fort Bend County case, the 122nd Galveston County case, and the bill of review case.

On June 7, 2023, the trial court granted Hernandez's plea in abatement, finding that "there [were] existing pending matters involving the same parties and controversy at the time of [the] filing of . . . Castano's Plea in Intervenion," including the 328th Fort Bend County case, the 122nd Galveston County case, and the bill of review case. The trial court abated the proceedings "until further order of the [c]ourt."

On July 24, 2023, Castano filed a motion for judgment and for declaratory judgment, asserting that the trial court had abated the case pending resolution of the proceedings in the 122nd Galveston County case, trial had occurred in the 122nd Galveston County case, and the judgment in the 122nd Galveston County case resolved the issues raised by Castano in the instant case. Castano requested that the trial court lift its abatement order and grant her summary judgment on her declaratory judgment claim based on the findings of fact and final judgment made by the court in the 122nd Galveston County case, i.e., that the property was the community property of Reyes and Castano and the property was fraudulently

transferred to Hernandez by Reyes "to hide it from his wife . . . Castano and his creditors." (Internal quotations omitted.) Specifically, Castano sought a declaration from the trial court that the property was the community property of Reyes and Castano and that Hernandez and Islas had no "title, claim or interest in [the] property" based on res judicata.

Castano attached to her motion the findings of fact and conclusions of law issued in the 122nd Galveston County case, which were signed on June 21, 2023. They stated, in pertinent part:

Findings of Fact

1.     Plaintiff Armadillo Glass, Inc. obtained a judgment against defendant . . . Reyes on May 10, 2019 in Harris County Civil Court at Law. No. 3, Case No. 1111656 for the amount of $51,329.65 plus post judgment interest at the rate of 5% per annum and costs of court of $261.75.

2.     No payments have been made on the Harris County Civil Court at Law Judgment.

3.     Defendant . . . Castano . . . and     defendant . . . Reyes     were married on or about November, 2012.

4.     They initiated a divorce action June 22, 2017 in the 328th Judicial District Court of Fort Bend County, Texas, cause no. 17-DCV-242799.

5.     Shortly after their divorce decree was entered by the 328th Judicial District Court on July 22, 2019, Reyes confessed to Castano that significant sums of marital/community property that rightfully belonged to the Castano/Reyes marital community property estate were secretly hidden with and transferred to Reyes' mistress, defendant . . . Hernandez . . . , over a period of over five (5) years.

7

6.     Among the reported transfers was the property the subject of this suit described as land and the home constructed thereon located at 615 29th Street, San Leon, Texas 77539, legally described as Lot Seven (7), of Broadway Breeze Subdivision of SAN LEON FARM HOME TRACTS, a subdivision in Galveston County, Texas (hereinafter "San Leon Property").

7.     Reyes' relationship with Hernandez began in 2014 or 2015 and ended around July, 2019.  Reyes was giving Hernandez ongoing funding as late as May, 2019.

8.     The San Leon Property including the house thereon are valued at over $700,000.00, and were fully paid for by Reyes, clandestinely paid in cash that was rightfully owned by Castano/Reyes's marital community estate.

9.     Reyes also used community funds to pay the ad valorem property taxes on the San Leon Property via a transfer of tax lien loans with Home Tax Solutions, LLC. Title to the San Leon Property is encumbered by a transferred tax lien in favor of Home Tax Solutions, LLC.

10.     Reyes deceived Castano about the San Leon Property by telling Castano the San Leon Property was never owned by their marital estate but was instead held by Reyes' construction business (1st Choice Builders) and had been transferred away as payment for a righteous business debt.

11.     The Castano/Reyes marital estate had exclusive possession of the San Leon Property, which was vacant but fully furnished, up until approximately November 29, 2019, when Hernandez changed the locks on the house and began occupying same as their reported residence, and refused to vacate the property.

12.     In 2016, Reyes contracted to purchase the raw land where the San Leon Property would be built and he made the final payment in January, 2018 to seller Charles Jardin.

8

13. Charles Jardin transferred the San Leon Property directly into Hernandez's name per Reyes' instructions.

14. In July, 2018, Reyes learned that Hernandez was married to . . . Islas . . . , so Reyes demanded that Hernandez return the various real properties Reyes had transferred to her. Title to the San Leon property was transferred from Hernandez back to Reyes on or about July 31, 2018, as well as other properties.

15. The San Leon Property and other properties were again transferred from Reyes back to Hernandez, including the deed for the San Leon Property dated January 11, 2019, recorded on February 13, 2019.

16. Reyes transferred the San Leon Property back into Hernandez's name on January 11, 2019, in trust in order to hide it from Castano and Reyes' creditors, including plaintiff Armadillo Glass, Inc.

17. Reyes demanded that Hernandez return the San Leon Property to him in August, 2019, but Hernandez refused, although Hernandez transferred back the other properties Reyes had previously transferred to Hernandez.

18. Hernandez never paid or otherwise provided any consideration for the San Leon Property.

19. Reyes deeded to Hernandez various real properties over the years, but that after the argument they had in July, 2018, she deeded three real properties back to Reyes, including the San Leon Property.

20. Hernandez's affair with Reyes lasted from at least sometime in 2014/2015 to sometime in 2019. When Hernandez met Reyes, she knew that Reyes ha[d] been married and that he already ha[d] at least one child from his marriage.

21. Hernandez was married in January, 2015 to . . . Islas . . . and filed for divorce on or about August of 2018 in the 246th Judicial District Court of Harris County, Texas, cause no. 2018-52952. Her marriage was ongoing simultaneously with her affair with Reyes.

22. Hernandez did not disclose in her sworn inventory in her divorce that she owned any interest in the San Leon Property.

23. Hernandez is currently still married to . . . Islas . . . .

. . . .

Conclusions of Law

. . . .

2. The San Leon [P]roperty is the community property of . . . Reyes and . . . Castano. § 3.001 and § 3.002, Texas Family Code.

3. The San Leon Property was fraudulently transferred to . . . Hernandez into a resulting trust for the benefit of . . . Reyes to hide it from his wife . . . Castano and his creditors, including plaintiff Armadillo Glass, Inc. or a resulting a trust should be imposed on the real property for such misconduct. . . . .

4. Armadillo Glass, Inc. is entitled to recover its Judgment rendered by the Harris County Civil Court at Law No. 3, Case No. 1111656 against . . . Reyes from the proceeds of the sale of the San Leon Property. . . . .

5. The Galveston County Sheriff or Constable may sell the San Leon Property to satisfy plaintiff Armadillo Glass, Inc.' s Judgment in this case and in Harris County Civil Court at Law No. 3, Case No. 1111656. . . . .

Castano also attached to her motion the final judgment signed by the trial court on June 21, 2023 in the 122nd Galveston County case. In its judgment, the trial court:

ORDERED, ADJUDGED, and DECREED that plaintiff Armadillo Glass, Inc. has a judgment lien against the property . . . arising from the [j]udgment signed on May 10, 2019 in favor of plaintiff [Amarillo Glass, Inc.] against defendant . . . Reyes in case number 1111656 in the County Civil Court at Law Number Three

10

(3) of Harris County, Texas in an amount totaling $51,329.65 plus costs of court of $261[.]75, with interest on the [j]udgment at the rate of 5% per annum.

Further, the trial court:

> ORDERED, ADJUDGED, AND DECREED that plaintiff Armadillo Glass, Inc.'s judgment lien against the property . . . [was] foreclosed and that an order of sale shall issue to any Sheriff or Constable within the State of Texas, directing him or her to seize and sell the same as under execution in satisfaction of this judgment including the Judgment in County Civil Court at Law Number Three (3) of Harris County, Texas signed May 10, 2019 in case number 1111656 in the amount of $51,329.65 plus costs of court of $261.75 and post judgment interest of 5% per annum. This Judgment shall have all the force and effect of a writ of possession as between plaintiff Armadillo Glass, Inc. and defendants and any person claiming under them.

In her response to Castano's motion for judgment and for declaratory judgment, Hernandez asserted that she did not have enough notice of the hearing on Castano's motion and the case should not be reinstated because "there [were] two other pending cases," the 328th Fort Bend County case and the bill of review case, "that were part of the basis of the abatement in th[e] case." Hernandez requested that the case remain abated until "the other matters preceding th[e] case [were] resolved" and Castano's motion be denied.

Hernandez and Islas then filed a joint notice of nonsuit of their claims against each other in the divorce proceeding. Subsequently, Castano filed a notice of nonsuits and motion to lift abatement. Castano attached to her motion, orders

11

granting the nonsuits of Castano and Reyes which were filed in the 328th Fort Bend County case and the bill of review case.

The trial court held a hearing on Castano's motion for judgment and declaratory judgment, during which it admitted certain exhibits into evidence. After the hearing, the trial court signed a final judgment, lifting the abatement and granting a declaratory judgment in favor of Castano. In its judgment, the trial court found:

1.  This Court issued an Order abating the issue in this matter pending resolution of a trial in Galveston County, Cause No. 19-CV-1677.

2.  The trier of fact in Cause No. 19-CV-1677 found that the San Leon property . . . is the community property of . . . Reyes and . . . Castano and not subject to division by this Court.

3.  This Court confirms and judgment is granted in favor of Intervenor that . . . Hernandez in an effort to defraud . . . Castano and . . . Reyes' creditors engaged in the fraudulent transfer of the property . . . and a constructive trust was therefore created. The Court finds and Orders that a Court of competent and mandatory jurisdiction made these findings after a trial on the merits under Cause No. 19-CV-1677 in the matter captioned "*Armadillo Glass v. Wendy Hernandez et al[.]*" In that proceeding, on final trial on the merits, the 122nd Judicial District of Galveston County concluded that the San Leon property was fraudulently transferred to . . . Hernandez in an effort to hide said property from . . . Castano and other creditors of her spouse . . . Reyes.

4.  Pursuant to Tex[as] [Civil] Practice[] and Remedies Code Chapter 37, Intervenor . . . Castano is entitled to declaratory relief. Further, this matter is res judicata in that it has been resolved, by final trial, by a [c]ourt of this County with jurisdiction over the dispute raised by Intervenor[] . . . Castano.

Thus, the trial court confirmed that the property was the community property of Reyes and Castano, and it divested Hernandez and Islas of any and all right to claim title. The judgment resolved all issues presented by Castano in the proceeding.

**Abatement**

In her third issue, Hernandez argues that the trial court erred in signing a final judgment in favor of Castano because the case was never reinstated following the trial court's June 7, 2023 abatement order.

On June 7, 2023, the trial court granted Hernandez's plea in abatement and abated the proceedings in the case "until further order of the [c]ourt." Castano subsequently filed a motion requesting that the trial court lift the abatement, and the trial court held a hearing. Following the hearing, the trial court signed a final judgment, lifting the abatement and granting a declaratory judgment in favor of Castano. The trial court was entitled to lift its previous abatement order in its final judgment. *See, e.g.*, *Kovalchuk v. Wilmington Sav. Fund Soc'y, FSB, as Tr. of Upland Mortg. Loan Tr. A*, No. 01-21-00388-CV, 2022 WL 2353092, at *2 (Tex. App.—Fort Worth June 30, 2022, no pet.) (mem. op.) (trial court's order granting summary-judgment motion and containing handwritten notation that abatement was lifted not erroneous); *see also Raley v. Daniel K. Hagood, P.C.*, No. 05-18-00914-CV, 2019 WL 5781916, at *4 (Tex. App.—Dallas Nov. 6, 2019, pet. denied) (mem. op.) (noting trial court's judgment implicitly granted party's request

13

to lift abatement). Further, to the extent that Hernandez questions whether the language in the trial court's judgment actually lifted its previous abatement order, we note that the handwritten statement in the final judgment, "Abatement is also lifted," is initialed by the trial court. *See Kovalchuk*, 2022 WL 2353092, at *2 (trial court's order granting summary-judgment motion and containing handwritten notation that abatement was lifted not erroneous); *In re Jones*, No. 06-05-00005-CV, 2005 WL 2219799, at *3 (Tex. App.—Texarkana Sept. 14, 2005, orig. proceeding) (mem. op.) (noting handwritten changes to contracts "are typically initialed to show acceptance by parties," but no requirement that "edits to a court's judgment" require initials); *see also Salazar v. Salazar*, No. 03-13-00385-CV, 2015 WL 307401, at *1 n.1 (Tex. App.—Austin Jan. 23, 2015, pet. denied) (mem. op.) ("[H]andwritten additions to a printed form control over pre-printed terms.").

Based on the foregoing, we hold that the trial court lifted the abatement it imposed on June 7, 2023.

We overrule Hernandez's third issue.

**Dominant Jurisdiction**

In her first issue, Hernandez argues that the trial court erred in lifting the abatement in this case because even though the 122nd Galveston County case had been resolved, the 328th District Court of Fort Bend County, not the 122nd District Court of Galveston County, had dominant jurisdiction over the dispute involving the

14

property, and abatement could not be lifted until the 328th Fort Bend County case was resolved.

Generally, if two lawsuits concerning the same subject matter are pending in courts of concurrent jurisdiction, the court in which suit was first filed acquires "dominant jurisdiction," if venue is proper in the county in which the suit was first filed. *Gonzalez v. Reliant Energy, Inc.*, 159 S.W.3d 615, 622 (Tex. 2005); *see Gordon v. Jones*, 196 S.W.3d 376, 382–83 (Tex. App.—Houston [1st Dist.] 2006, no pet.). "The jurisprudential reason for the rule is that once a matter is before a court of competent jurisdiction, its action must necessarily be exclusive because it is impossible that two courts can, at the same time, possess the power to make a final determination of the same controversy between the same parties." *Perry v. Del Rio*, 66 S.W.3d 239, 252 (Tex. 2001) (internal quotations omitted).

Hernandez, in her briefing, focuses on whether the 328th District Court of Fort Bend County had dominant jurisdiction over the trial court in the instant case because Reyes filed his original petition for postdivorce division of property in the 328th Fort Bend County case on September 9, 2019 and Castano's petition in intervention was filed in this case on March 10, 2023. Both Reyes's petition for postdivorce division of property and Castano's petition in intervention involved the property and whether it constituted community property belonging to Reyes and Castano, rather than Hernandez. However, the 122nd Galveston County case also

15

concerned whether the property constituted the community property of Reyes and Castano, and it was filed on September 6, 2019, before the 328th Fort Bend County case and the instant case. Hernandez agreed in her briefing that the 122nd Galveston County case was related to the property and the same dispute as the 328th Fort Bend County case and this case.[4] Because the 122nd Galveston County case was the first-filed case involving the same subject matter, the 122nd Judicial District Court of Galveston County had dominant jurisdiction, and the case was entitled to proceed in that court. *See Perry*, 66 S.W.3d at 252. Thus, the trial court properly abated this case to allow the 122nd Galveston County case to proceed. *See Jallan v. PNA Invs., LLC*, No. 01-21-00150-CV, 2022 WL 598672, at *5 (Tex. App.—Houston [1st Dist.] Mar. 1, 2022, no pet.) (mem. op.).

After a trial, on June 21, 2023, the 122nd Judicial District Court of Galveston County signed a final judgment, confirming that the property was the community property of Reyes and Castano and divesting Hernandez and Islas of any and all right to claim title. This final judgment resolved the issues of whether the property constituted community property of Reyes and Castano and whether Hernandez had any interest in the property. *See In re Servicios Legales de Mesoamerica S. de R.L.*, No. 13-12-00466-CV, 2014 WL 895513, at *9 (Tex. App.—Corpus Christi–

---

[4] The issue of whether the 328th Fort Bend County case, or the bill of review case, should have been abated while the 122nd Galveston County case was proceeding is not before us.

Edinburg Mar. 6, 2014, orig. proceeding) (mem. op.) ("[I]t is impossible for two courts to make a final determination regarding the same controversy between the same parties at the same time."). Because the 122nd Galveston County case concluded, it was proper for the trial court in this case to lift the previously imposed abatement. *In re Volkswagen Clean Diesel Litig.*, 557 S.W.3d 78, 87 (Tex. App.— Austin 2017, orig. proceeding) (abatement of later-filed cases only required until first-filed case resolved); *see also Arthur v. Blackburne & Browne Mortg. Fund I*, No. 14-21-00396-CV, 2023 WL 2711379, at *4 n.12 (Tex. App.—Houston [14th Dist.] Mar. 30, 2023, no pet.) (mem. op.) (when proceedings in court with dominant jurisdiction have concluded, other court may proceed). Accordingly, we hold that the trial court did not err in lifting the abatement in the instant case.

We overrule Hernandez's first issue.

## Declaratory Judgment

In her second issue, Hernandez argues that the trial court erred in granting Castano's motion for judgment and declaratory judgment because it essentially "improperly granted summary judgment."

Hernandez first argues that she did not receive sufficient notice "for the court to grant a summary judgment" because she did not have twenty-one days' notice of a hearing on Castano's motion. Except on leave of court, with notice to opposing counsel, a motion for summary judgment and any supporting affidavits must be filed

17

and served at least twenty-one days before the time specified for the hearing. *See* TEX. R. CIV. P. 166a(c). Here, Castano filed her motion for judgment and declaratory judgment on July 24, 2023. Ultimately, a hearing was held on her motion on October 9, 2023. To the extent that Hernadez asserts in her briefing that the hearing held on October 9, 2023 was not on Castano's motion for judgment and for declaratory judgment, we disagree. The notice of hearing specifically states that a hearing would be held on Castano's requests to lift abatement and for judgment.

Further, we note that a complaint of lack of insufficient notice of a summary-judgment hearing is a non-jurisdictional defect that the non-movant can waive. *May v. Nacogdoches Mem'l Hosp.*, 61 S.W.3d 623, 626 (Tex. App.—Tyler 2001, no pet.). Notably, a non-movant who receives notice of a summary-judgment hearing that is untimely, but sufficient to enable the non-movant to attend the hearing, must file a motion for continuance or raise the complaint of late notice in writing, supported by affidavit evidence, and raise the issue before the trial court during the summary-judgment hearing. *Nguyen v. Short, How, Frels & Heitz, P.C.*, 108 S.W.3d 558, 560 (Tex. App.—Dallas 2003, pet. denied); *Rios v. Tex. Bank*, 948 S.W.2d 30, 33 (Tex. App.—Houston [14th Dist.] 1997, no writ). Hernandez did not file a motion for continuance of the trial court's October 9, 2023 hearing[5] nor did she raise her insufficient notice complaint in writing, supported by affidavit

---

[5] Hernandez moved to continue a hearing that was set on October 2, 2023.

18

evidence.[6] *See Bell v. Citibank (S.D.) N.A.*, No. 06-06-00037-CV, 2006 WL 3091361, at *1 (Tex. App.—Texarkana Nov. 2, 2006, no pet.) (mem. op.) ("Because the appellate record contains no evidence that [non-movant] filed a motion for continuance or filed an affidavit in support of his allegation of deficient notice, the error, if any, is not preserved for our review.").

Hernandez next asserts that insufficient evidence supported the trial court's granting of summary judgment on Castano's claim for declaratory judgment.

We review summary judgment orders de novo. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We review declaratory judgments under the same standards as other judgments and decrees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.010; *Lidawi v. Progressive Cty. Mut. Ins. Co.*, 112 S.W.3d 725, 730 (Tex. App.—Houston [14th Dist.] 2003, no pet.). When a trial court determines a declaratory judgment action through summary-judgment

---

[6] We also conclude that Hernandez failed to preserve her insufficient notice complaint during the hearing because once it became clear that Castano was asking for a final judgment, Hernandez did not object on the basis of insufficient notice. *See* Tex. R. App. P. 33.1(a)(1)(A) (requiring timely and *specific objection* in trial court to preserve error); *see also Parsons v. Greenberg*, No. 02-10-00131-CV, 2012 WL 310505, at *6 (Tex. App.—Fort Worth Feb. 2, 2012, pet. denied) (mem. op.) (objection not preserved where not clear from record what party's objection was). Further, although Hernandez asserts that she raised her lack-of-sufficient-notice complaint in her motion for new trial, a party may only raise a complaint of late notice in a post-trial motion if she did not receive any notice of the summary-judgment hearing and did not attend the hearing. *See Nguyen v. Short, How, Frels & Heitz, P.C.*, 108 S.W.3d 558, 560 (Tex. App.—Dallas 2003, pet. denied); *Rios v. Tex. Bank*, 948 S.W.2d 30, 33 (Tex. App.—Houston [14th Dist.] 1997, no writ).

procedure, we review the propriety of the trial court's judgment under the same standards applied to summary judgments. *See Eisen v. Cap. One, N.A.*, 232 S.W.3d 309, 312 (Tex. App.—Beaumont 2007, pet. denied); *Lidawi*, 112 S.W.3d at 730.

The party moving for summary judgment as a matter of law must establish that (1) no genuine issue of fact exists and (2) she is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). If the moving party produces evidence entitling her to summary judgment, the burden shifts to the non-movant to present evidence that raises a fact issue. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). In determining whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). We review the summary-judgment record "in the light most favorable to the non[-]movant, indulging every reasonable inference and resolving any doubts against the motion." *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005); *see also Mosaic Baybrook One, L.P. v. Simien*, 674 S.W.3d 234, 252 (Tex. 2023). "When the trial court does not specify the grounds for its ruling, a summary judgment must be affirmed if any of the grounds on which judgment is sought are meritorious." *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

In her motion for judgment and for declaratory judgment, Castano moved for summary judgment as a matter of law on the basis of res judicata, requesting a declaration that the property was the community property of Reyes and Castano and that Hernandez and Islas had no "title, claim or interest in [the] property." Castano attached to her motion the judgment and the findings of fact and conclusions of law issued in the 122nd Galveston County case, in which the court held that the property constituted the community property of Reyes and Castano.[7]

In her response to Castano's motion, Hernandez did not address the merits of Castano's motion or attempt to raise a fact issue. *See, e.g.*, *Schumacher v. Trois*, 705 S.W.3d 854, 870–71 (Tex. App.—San Antonio 2024, pet. denied) (where movant met summary-judgment burden to show he was rightful owner of paining, burden shifted to non-movant and because non-movant failed to present evidence to raise genuine issue of material fact regarding ownership of painting, trial court did not err in granting summary judgment and declaring movant as rightful owner). Moreover, Hernandez did not argue in her opening brief that Castano failed to establish her entitlement to a declaratory judgment based on res judicata, and the trial court's judgment specifically mentions res judicata as a basis for its determination. *See Marshall v. MarOpCo, Inc.*, 714 S.W.3d 724, 762 (Tex. App.—

---

[7] The trial court admitted a copy of the findings of fact and conclusions of law from the 122nd Galveston County case into evidence at its October 9, 2023 hearing.

21

Houston [1st Dist.] 2025, pet. filed) ("[W]e must affirm the complained-of summary-judgment order where appellants have not challenged all bases for the order or judgment"). Accordingly, we hold that Hernandez has not established that the trial court erred in granting Castano's motion for judgment and declaratory judgment.

We overrule Hernandez's second issue.

## Conclusion

We affirm the judgment of the trial court.


Kristin Guiney
Justice

Panel consists of Justices Guerra, Guiney, and Johnson.